UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS & BETTS INTERNATIONAL LLC, | CIVIL ACTION NO. |
| Plaintiff, | |
| v. | |
| THE WIREMOLD COMPANY, | SEPTEMBER 29, 2017 |
| Defendant. | |

## COMPLAINT

Plaintiff Thomas & Betts International LLC, for its Complaint against Defendant The Wiremold Company, hereby alleges, through its attorneys Barnes & Thornburg LLP and Murtha Cullina LLP, as follows:

## THE PARTIES

1.     Plaintiff Thomas & Betts International LLC ("Thomas & Betts") is a limited liability company formed and existing under the laws of the State of Delaware.

2.     Defendant The Wiremold Company ("Wiremold") is a corporation organized and existing under the laws of the State of Connecticut.

## JUSISDICTION AND VENUE

3.     This case involves patent infringement and arises under the Patent Laws of the United States, Title 35, United States Code.  Thus, this Court has subject matter jurisdiction under at least 28 U.S.C. § 1331 (federal question) and § 1338 (patent actions).

4.      This Court has general personal jurisdiction over Wiremold at least because Wiremold is incorporated in the State of Connecticut, Wiremold has its principal place of business in the State of Connecticut, and, upon information and belief, Wiremold has engaged in continuous and systematic business activities in the State of Connecticut.

5.      This Court also has specific personal jurisdiction over Wiremold at least because Wiremold has sufficient minimum contacts with the State of Connecticut and such contacts have given rise to Thomas & Betts' claim of patent infringement.  Upon information and belief, these contacts include at least Wiremold's making, using, offering to sell, and selling, in the State of Connecticut, the products and components that Thomas & Betts alleges to be covered by its patent in this Complaint.

6.      Venue in this judicial district is proper pursuant to 28 U.S.C. § 1400(b) at least because Wiremold is incorporated in and, thus, resides in the State of Connecticut.

<u>THE INFRINGED PATENT AND WIREMOLD'S KNOWLEDGE THEREOF</u>

7.      U.S. Patent No. 6,417,446 ("the '446 Patent"), entitled "Concealed Service Poke-through Device," was issued by the United States Patent & Trademark Office on July 9, 2002, to Thomas & Betts International, Inc.

8.      On March 21, 2013, Thomas and Betts International, Inc. was converted from a corporation to a limited liability company named Thomas & Betts International LLC ("Thomas & Betts").

2

9.     Thomas & Betts is the owner of all right, title, and interest in the '446 Patent.

10.    The '446 Patent has not expired and is in full force and effect.

11.    Pursuant to 35 U.S.C. § 282, the '446 Patent and each of its claims are presumed valid.

12.    Defendant has had knowledge of the '446 Patent and its contents and scope since at least July 6, 2005, when the '446 Patent was cited to Wiremold by the United States Patent & Trademark Office during the prosecution of U.S. Patent Application Serial No. 11/014,479, now U.S. Patent No. 7,183,503.

<u>THE ACCUSED PRODUCTS AND COMPONENTS</u>

13.    Wiremold markets products designated as Evolution Series Poke-Thru Devices (hereinafter, "the Accused Products").

14.    Upon information and belief, Wiremold has made the Accused Products in the United States.

15.    Upon information and belief, Wiremold continues to make the Accused Products in the United States.

16.    Upon information and belief, Wiremold has used the Accused Products in the United States.

17.    Upon information and belief, Wiremold continues to use the Accused Products in the United States.

18.    Wiremold has offered to sell the Accused Products in the United States.

19.     Wiremold continues to offer the Accused Products for sale in the United States.

20.     Wiremold has sold the Accused Products in the United States.

21.     Wiremold continues to sell the Accused Products in the United States.

22.     Wiremold markets various components designated as Evolution Series Poke-Thru Device Cover Assemblies, Evolution Series Poke-Thru Device Tamper-Resistant Cover Assemblies, Evolution Series Center Mount Device Plates, and Evolution Series Bottom Feed Side Mount Device Plates (collectively, "the Accused Components") for use with the Accused Products.

23.     Wiremold has offered to sell the Accused Components in the United States.

24.     Wiremold continues to offer the Accused Components for sale in the United States.

25.     Wiremold has sold the Accused Components in the United States.

26.     Wiremold continues to sell the Accused Components in the United States.

27.     Upon information and belief, Wiremold has imported the Accused Components into the United States.

28.     Upon information and belief, Wiremold continues to import the Accused Components into the United States.

29.     The Accused Products are concealed poke-through devices.

30.     The Accused Products are intended for installation in a hole in a floor structure.

31.     The Accused Products are intended for installation in a hole in a floor structure, said floor structure defining a floor in a first working environment and a ceiling in a second working environment.

32.     The Accused Products are intended for installation in a hole in a floor structure, said floor structure defining a floor in a first working environment and a ceiling in a second working environment, said second working environment including a junction box.

33.     The Accused Products include a body.

34.     The Accused Products include a body having upper and lower ends.

35.     The Accused Products include a body sized for insertion within a hole.

36.     The Accused Products include a body having upper and lower ends and sized for insertion within a hole.

37.     The Accused Products include a body having an upper end including a generally circular receptacle-mounting region.

38.     The Accused Products include a body having an upper end including a generally circular receptacle-mounting region, said mounting region defining four substantially equal-sized locating quadrants.

39.     The Accused Products include a body having an upper end including a generally circular receptacle-mounting region, said mounting region defining

four substantially equal-sized locating quadrants, at least one of said quadrants including two electrical outlets.

40.     The Accused Products include a generally circular receptacle-mounting region.

41.     The Accused Products include a generally circular receptacle-mounting region, said mounting region defining four substantially equal-sized locating quadrants.

42.     The Accused Products include a generally circular receptacle-mounting region, said mounting region defining four substantially equal-sized locating quadrants, at least one of said quadrants including two electrical outlets.

43.     The Accused Products include a body having a lower end, wherein said lower end communicates with a junction box.

44.     The Accused Products include a body having a lower end, wherein said lower end communicates with a junction box whereby electrical power may be supplied to outlets of The Accused Products.

45.     The Accused Products include a body having upper and lower ends and sized for insertion within a hole, said upper end including a generally circular receptacle-mounting region, said mounting region defining four substantially equal-sized locating quadrants, at least one of said quadrants including two electrical outlets, wherein said lower end communicates with a junction box whereby electrical power may be supplied to said outlets.

46.     The Accused Products are concealed poke-through devices for installation in a hole in a floor structure, said floor structure defining a floor in a

first working environment and a ceiling in a second working environment, said second working environment including a junction box, comprising: a body having upper and lower ends and sized for insertion within said hole, said upper end including a generally circular receptacle-mounting region, said mounting region defining four substantially equal-sized locating quadrants, at least one of said quadrants including two electrical outlets, and wherein said lower end communicates with said junction box whereby electrical power may be supplied to said outlets.

47.    The Accused Products include all elements of claim 1 of the '446 Patent.

48.    The Accused Products are recessed poke-through devices.

49.    The Accused Products include a tubular body.

50.    The Accused Products include a tubular body having upper and lower ends.

51.    The Accused Products include a tubular body sized for insertion within a hole.

52.    The Accused Products include a tubular body having upper and lower ends and sized for insertion within a hole.

53.    The Accused Products include a tubular body having an upper end defining an interface mounting region.

54.    The Accused Products include a tubular body having a lower end adapted to electrically communicate with a junction box.

55.    The Accused Products include a tubular body having upper and lower ends and sized for insertion within said hole, said upper end defining an interface mounting region, said lower end adapted to electrically communicate with a junction box.

56.    The Accused Products include an intumescent sleeve.

57.    The Accused Products include an intumescent sleeve surrounding a tubular body.

58.    The Accused Products include an electrical interface.

59.    The Accused Products include an electrical interface mounted in an interface mounting region.

60.    The Accused Products include an electrical interface having an upper surface facing a floor.

61.    The Accused Products include an electrical interface having an upper surface facing a floor, the upper surface being spaced a distance below said floor.

62.    The Accused Products include an electrical interface mounted in an interface mounting region, said interface having an upper surface facing said floor, said upper surface being spaced a distance below said floor.

63.    The Accused Products include a cover assembly.

64.    The Accused Products include a cover assembly including a floor plate.

65.    The Accused Products include a cover assembly including at least one access door.

8

66.     The Accused Products include a cover assembly including a floor plate and at least one access door.

67.     The Accused Products include a cover assembly including at least one access door, said door movable between a closed position and an open position.

68.     The Accused Products include a cover assembly including at least one access door, said door movable between a closed position wherein an electrical interface is enclosed within the device and an open position.

69.     The Accused Products include a cover assembly including at least one access door, said door movable between a closed position and an open position wherein an electrical interface may be accessed through a hole.

70.     The Accused Products include a cover assembly including at least one access door, said door movable between a closed position wherein an electrical interface is enclosed within the device and an open position wherein said interface may be accessed through a hole.

71.     The Accused Products include a cover assembly including at least one access door, said door having an inner surface.

72.     The Accused Products include a cover assembly including at least one access door, said door having an inner surface which defines a plane parallel to an upper surface of an electrical interface when said door is in a closed position.

73.     The Accused Products include an upper surface of an electrical interface recessed a distance below a plane of a door when said door is in a closed position.

74.     The Accused Products include an upper surface of an electrical interface recessed a distance below a plane of a door when said door is in a closed position whereby forces applied to said closed door are not transferred to said interface.

75.     The Accused Products include a cover assembly including a floor plate and at least one access door, said door movable between a closed position wherein said interface is enclosed within said device and an open position wherein said interface may be accessed through said hole, said door having an inner surface which defines a plane parallel to said upper surface when said door is in said closed position, and wherein said upper surface of said interface is recessed a distance below said plane of said door when said door is in said closed position whereby forces applied to said closed door are not transferred to said interface.

76.     The Accused Products are recessed poke-through devices for installation in a hole in a floor structure, said floor structure defining a floor in a first working environment and a ceiling in a second working environment, said second working environment including a junction box, comprising: a tubular body having upper and lower ends and sized for insertion within said hole, said upper end defining an interface mounting region, said lower end adapted to electrically communicate with said junction box; an intumescent sleeve

surrounding said body; an electrical interface mounted in said interface mounting region, said interface having an upper surface facing said floor, said upper surface being spaced a distance below said floor; a cover assembly including a floor plate and at least one access door, said door movable between a closed position wherein said interface is enclosed within said device and an open position wherein said interface may be accessed through said hole, said door having an inner surface which defines a plane parallel to said upper surface when said door is in said closed position, and wherein said upper surface of said interface is recessed a distance below said plane of said door when said door is in said closed position whereby forces applied to said closed door are not transferred to said interface.

77.     The Accused Products include all elements of claim 15 of the '446 Patent.

78.     The Accused Products are intended for installation in a floor structure having upper and lower surfaces defining a floor thickness and having a poke-through receiving hole formed therein, said receiving hole extending in a direction generally perpendicular to said upper and lower surfaces.

79.     Upon information and belief, The Accused Products have been installed in a floor structure having upper and lower surfaces defining a floor thickness and having a poke-through receiving hole formed therein, said receiving hole extending in a direction generally perpendicular to said upper and lower surfaces.

80.     Upon information and belief, Wiremold (or another party acting on Wiremold's behalf) has installed The Accused Products in a floor structure having upper and lower surfaces defining a floor thickness and having a poke-through receiving hole formed therein, said receiving hole extending in a direction generally perpendicular to said upper and lower surfaces.

81.     The Accused Products include a body having an upper end defining an interface mounting region.

82.     The Accused Products include a body having a lower end adapted to electrically communicate with a junction box.

83.     The Accused Products include a body having an upper end defining an interface mounting region and a lower end adapted to electrically communicate with a junction box.

84.     The Accused Products include a body having upper and lower ends and sized for insertion within said hole, said upper end defining an interface mounting region, said lower end adapted to electrically communicate with a junction box.

85.     The Accused Products include an electrical interface having an upper surface facing an upper surface of a floor structure.

86.     The Accused Products include an electrical interface retained in a receiving hole at a distance below an upper surface of a floor structure.

87.     The Accused Products include an electrical interface retained in a receiving hole at a distance below an upper surface of a floor structure which is

sufficient to prevent said interface from interfering with objects and persons located on said upper surface of said floor structure.

88.     The Accused Products include an electrical interface retained in a receiving hole at a distance below an upper surface of a floor structure which is sufficient to prevent said interface, and a typical connector secured thereto, from interfering with objects and persons located on said upper surface of said floor structure.

89.     Installation of The Accused Products forms, in combination: a floor structure having upper and lower surfaces defining a floor thickness and having a poke-through receiving hole formed therein, said receiving hole extending in a direction generally perpendicular to said upper and lower surfaces; and a recessed poke-through device comprising: a body having upper and lower ends and sized for insertion within said hole, said upper end defining an interface mounting region, said lower end adapted to electrically communicate with a junction box; an electrical interface mounted in said interface mounting region, said interface having an upper surface facing said upper surface of said floor structure; a cover assembly including a floor plate and at least one access door, said door movable between a closed position wherein said interface is enclosed within said device and an open position wherein said interface may be accessed through said hole, said door having an inner surface which defines a plane parallel to said upper surface of said electrical interface when said door is in said closed position, and wherein said upper surface of said interface is recessed a distance below said plane of said door when said door is in said closed position

13

whereby forces applied to said closed door are not transferred to said interface; said interface being retained in said receiving hole at a distance below said upper surface of said floor structure which is sufficient to prevent said interface, and a typical connector secured thereto, from interfering with objects and persons located on said upper surface of said floor structure.

90.     When the Accused Products are installed in a floor structure, the combination includes all elements of claim 33 of the '446 Patent.

91.     The Accused Products include a portion of intumescent material.

92.     The Accused Products include a portion of intumescent material cooperating with a body to limit travel of fire through a hole.

93.     The Accused Products include a portion of intumescent material cooperating with a tubular body to limit travel of fire through a hole.

94.     The Accused Products include an upper surface of an electrical interface recessed a distance below a plane of a door to protect said interface from environmental hazards.

95.     The Accused Products are recessed poke-through devices for installation in a hole in a floor structure, said floor structure defining a floor in a first working environment and a ceiling in a second working environment, said second working environment including a junction box, comprising: a tubular body having upper and lower ends and sized for insertion within said hole, said upper end defining an interface mounting region, said lower end adapted to electrically communicate with said junction box; a portion of intumescent material cooperating with said body to limit travel of fire through said hole; an

electrical interface mounted in said interface mounting region, said interface having an upper surface facing said floor; and a cover assembly including a floor plate and at least one access door, said door movable between a closed position wherein said interface is enclosed within said device and an open position wherein said interface may be accessed through said hole, said door having an inner surface which defines a plane parallel to said upper surface when said door is in said closed position, and wherein said upper surface of said interface is recessed a distance below said plane to protect said interface from environmental hazards.

96.     The Accused Products include all elements of claim 35 of the '446 Patent.

**WIREMOLD'S INFRINGEMENT OF THE '446 PATENT**

97.     Wiremold has directly infringed and continues to directly infringe one or more claims of the '446 Patent, including at least claims 1, 15, 33, and 35 of the '446 Patent, in violation of 35 U.S.C. § 271(a), at least by making, using, offering to sell, and selling the Accused Products in the United States.

98.     Upon information and belief, Wiremold has indirectly infringed and continues to indirectly infringe one or more claims of the '446 Patent, including at least claims 1, 15, 33, and 35 of the '446 Patent, in violation of 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement of the '446 Patent by others, including Wiremold's customers and end users of the Accused Products and Accused Components, who make, use, offer to sell, and/or sell directly infringing devices and combinations.

99.    Upon information and belief, Wiremold has acted and continues to act with the specific intent that the Accused Products and Accused Components be used to infringe the '446 Patent.

100.    Upon information and belief, Wiremold has indirectly infringed and continues to indirectly infringe one or more claims of the '446 Patent, including at least claims 1, 15, 33, and 35 of the '446 Patent, in violation of 35 U.S.C. § 271(c), by knowingly and intentionally contributing to the infringement of the '446 Patent by others, including Wiremold's customers and end users of the Accused Products and Accused Components, who make, use, offer to sell, and/or sell directly infringing devices and combinations.  Upon information and belief, Wiremold has contributed to others' direct infringement of the '446 Patent by offering to sell, selling, and importing the Accused Components.

101.    The Accused Components are material parts of the inventions of the '446 Patent, including at least the inventions of claims 1, 15, 33, and 35 of the '446 Patent.

102.    The Accused Components are especially made or especially adapted for use in infringing one or more claims of the '446 Patent, including at least claims 1, 15, 33, and 35.

103.    Upon information and belief, Wiremold knows the Accused Components to be especially made or especially adapted for use in infringing one or more claims of the '446 Patent, including at least claims 1, 15, 33, and 35.

104.   The Accused Components are not staple articles or commodities of commerce suitable for substantial uses other than infringing one or more claims of the '446 Patent, including at least claims 1, 15, 33, and 35.

105.   Upon information and belief, Wiremold knows the Accused Components are not staple articles or commodities of commerce suitable for substantial uses other than infringing one or more claims of the '446 Patent, including at least claims 1, 15, 33, and 35.

106.   Upon information and belief, Wiremold's infringement of the '446 Patent has been and continues to be willful.

107.   Thomas & Betts has been damaged and irreparably harmed by Wiremold's infringement of the '446 Patent.

108.   Thomas & Betts will continue to be damaged and irreparably harmed by Wiremold's infringement of the '446 Patent unless such infringement is enjoined.

## PRAYER FOR RELIEF

Wherefore, Thomas & Betts demands judgment in its favor and against Wiremold as follows:

1.      A judgment under 35 U.S.C. § 271(a) that Wiremold has directly infringed the '446 Patent;

2.      A judgment under 35 U.S.C. § 271(b) and/or (c) that Wiremold has indirectly infringed the '446 Patent;

3.      An order under 35 U.S.C. § 283 preliminarily and permanently enjoining Wiremold and its officers, agents, subsidiaries, successors, employees, representatives, and assigns from infringing the '446 Patent.

4.      An award of damages under 35 U.S.C. § 284 adequate to compensate Thomas & Betts for Wiremold's infringement of the '446 Patent and an accounting to determine the proper amount of such damages;

5.      A three-fold increase in damages as a result of Wiremold's willful acts of infringement;

6.      An award under 35 U.S.C. § 284 of costs and prejudgment and post judgment interest on the compensatory damages to be awarded to Thomas & Betts;

7.      An award under 35 U.S.C. § 285 of Thomas & Betts's attorney's fees incurred in this action; and

8.      Such further relief as this Court deems just and proper.


JURY TRIAL DEMANDED

Dated:  September 29, 2017          By  */s/ Terence J. Brunau*_____
                                             Jennifer M. DelMonico
                                             *jdelmonico@murthalaw.com*
                                             Terence J. Brunau
                                             *tbrunau@murthalaw.com*

                                    **MURTHA CULLINA LLP**
                                    **One Century Tower**
                                    **265 Church Street, 9th Floor**
                                    **New Haven, CT 06510**
                                    **Tel.:  203-772-7700**
                                    **Fax:  203-772-7723**

                                             Paul B. Hunt (*pro hac vice* forthcoming)
                                             *paul.hunt@btlaw.com*
                                             Joshua P. Larsen (*pro hac vice*  forthcoming)
                                             *joshua.larsen@btlaw.com*
                                             Sean M. Phipps (*pro hac vice* forthcoming)
                                             *sean.phipps@btlaw.com*

                                    **BARNES & THORNBURG LLP**
                                    **11 South Meridian Street**
                                    **Indianapolis, IN 46204**
                                    **Tel.:  317-231-1313**
                                    **Fax:  317-231-7433**

                                    ***Attorneys for Plaintiff Thomas & Betts***
                                    ***International LLC***